BURKE, Justice.
[¶1] This appeal, brought in the name of LS ("Mother"), challenges the district court's imposition of sanctions against Mother's attorney, Traci E. Mears, for violations of W.R.C.P. 11. We conclude that Mother does not have standing to pursue an appeal on behalf of Ms. Mears and that Ms. Mears failed to file a timely notice of appeal challenging the order. As a result, we lack jurisdiction and dismiss this appeal.
ISSUES
[¶2] Mother presents one issue: Did the district court err as a matter of law when it imposed sanctions on Traci E. Mears under W.R.C.P. 11 ?
[¶3] Father raises several issues, one of which is dispositive: Does the Wyoming Supreme Court have subject matter jurisdiction to hear Mother's appeal of the sanctions imposed against her attorney, Traci E. Mears?
FACTS
[¶4] In 2009, Father filed a Petition to Establish Paternity, Custody and Child Support. Father and Mother eventually reached an agreement resolving the matter. In 2011, the district court entered an order establishing JEQ as the father, specifying joint legal custody in Father and Mother but primary physical custody with Mother, and ordering Father to pay child support to Mother.
[¶5] In 2016, Mother engaged attorney Traci E. Mears to initiate adoption proceedings so that Mother's husband could adopt the child. Father and Mother agreed that Father would consent to the adoption and, in return, Mother "agreed to waive all child support and related arrearages provided the Consent is signed and returned within ... 30 days." Father engaged attorney Sky Phifer to prepare the necessary documents and bring the matter to a conclusion in accordance with the agreement.
[¶6] Mr. Phifer delivered Father's consent to Ms. Mears prior to the 30-day deadline. He also sent Ms. Mears a Release Agreement and Waiver of Child Support and an Order on Child Support. E-mail messages between Ms. Mears and Mr. Phifer indicate multiple disagreements about these and related documents, but the record reflects that Ms. Mears, on behalf of Mother, filed Father's consent in the adoption proceeding on May 9, 2016. The adoption was completed on July 11, 2016.
[¶7] Mr. Phifer continued to contact Ms. Mears, through e-mail messages and telephone calls, reminding her that he had not received the document releasing Father from his child support arrearages. Ms. Mears offered various responses including, among others, that she could not locate the original documents, that her representation of Mother had ended, and that she would be out of town for the Thanksgiving Holiday. In mid-November of 2016, Ms. Mears asserted that "[t]here was not any requirement that these documents would be signed and returned." Mr. Phifer responded that they had agreed Mother would sign and deliver a document releasing Father from his child support arrearages, *826 and informed Ms. Mears that if he did not receive the documents by the end of November, he would file a motion to compel.
[¶8] Ms. Mears responded with an e-mail message seeking changes to the release agreement, and with another e-mail message stating that if she did not receive a new release agreement her client would revoke the "offer to waive back due support." Following further correspondence, increasingly hostile in tone, Mr. Phifer filed a Motion to Enforce Settlement Agreement on December 5, 2016. On December 12, 2016, Ms. Mears filed the Stipulation on Child Support, in which Mother "waive[d] all past present and future child support, medical obligations and paternity testing costs."
[¶9] Mr. Phifer informed Ms. Mears that he had received the stipulation and order releasing Father from his child support arrearages. He also informed her that "as a result of you and your client's actions," Father had incurred additional attorney's fees to enforce the settlement agreement, and reminded her: "As I stated [earlier]: 'When the Stipulation and Order on the arrearages are filed, and [Father's] attorney's fees and costs are paid, my client will dismiss his Motion [to Enforce Settlement Agreement].' " Ms. Mears stated that her client would not agree to pay attorney's fees and, further, that her client would be requesting an order that Father pay Mother's attorney's fees. "[W]e will see you in court and let the Judge there decide this issue," Ms. Mears wrote.
[¶10] After a hearing, the district court ruled in favor of Father. In its order, the district court wrote:
The evidentiary record proves conclusively that the parties entered into an agreement whereby [Father] agreed to provide his written relinquishment to his parental rights ... and his consent to the child's adoption by [Mother's] husband. In exchange, [Mother] was to waive her right to past child support arrearages, future child support, medical cost[s], and costs of paternity testing.
[Father] performed his obligations pursuant to the agreement. ... That [Mother] accepted the agreement is simply undeniable as she utilized the documents received to her profound benefit in the adoption proceeding finalized in July, 2016.
It is likewise undeniable that [Mother] failed to perform her end of the bargain ... until threatened with the filing of a motion to enforce the settlement agreement, some 6 months after obtaining the consent to adoption and utilizing it to obtain the adoption decree.
[Mother's] failure to provide the signed agreement, or any version thereof, was without justification or excuse. ...
It is also undeniable that [Father] has incurred unnecessary attorney's fees as a result of [Mother's] failure to perform her obligations under the parties' agreement.
The district court concluded that an award of attorney's fees was "appropriate to address [Mother's] and [her] counsel's egregious failure to comply with the parties' settlement agreement." The Court entered its order enforcing the settlement agreement on August 29, 2017. In the order, Mother was required to pay father's attorney fees in the amount of $4,903.50. Mother did not appeal that order.
[¶11] While that matter was pending, Father's counsel also filed a Motion for Sanctions asking the district court to order Ms. Mears to pay Father's attorney's fees and costs "as a sanction for violation of [W.R.C.P.] 11(b)." Ms. Mears responded, denying any wrongdoing and asserting that Father's attorney was responsible for the delays in fulfilling the settlement agreement. Following a hearing, the district court determined that Ms. Mears had violated W.R.C.P. 11(b) and that sanctions would be appropriate "due to the improper and inexcusable misrepresentations made by Traci E. Mears to the Court causing harassment, unnecessary delay and a needless increase in the cost in the litigation." The Court ordered Ms. Mears to pay $4,903.50 for Father's attorney fees and costs, and also specified that the "sanction is reduced to judgment and is joint and several with the judgment previously awarded against [Mother]." A Notice of Satisfaction of Judgment was filed indicating that the judgments were satisfied by Mother *827 and Ms. Mears, each paying one half of the judgment amount. This appeal followed.
DISCUSSION
[¶12] Because Father's jurisdictional issue is potentially dispositive, we address it first. "Whether a court has jurisdiction to decide a particular matter is a question of law, which we review de novo ." Edsall v. Moore , 2016 WY 71, ¶ 10, 375 P.3d 799, 802 (Wyo. 2016) (citing Scott v. Board of Trustees , 2015 WY 128, ¶ 7, 357 P.3d 1137, 1138 (Wyo. 2015) ).
[¶13] In 2002, we made it clear that an appellate challenge to a sanction order against an attorney must be brought in the name of that attorney.
Clients do not have standing to appeal the award of attorney's fees against their attorney. Laurino v. Tate , 220 F.3d 1213, 1218 (10th Cir. 2000) ; Cabrera v. City of Huntington Park , 159 F.3d 374, 382 (9th Cir. 1998). Clients simply do not possess the requisite interest, pecuniary or otherwise, to support standing. Estate of Bishop v. Bechtel Power Corp. , 905 F.2d 1272, 1276 (9th Cir. 1990) ("Because a party can hardly be expected to shoulder the financial burden of sanctions entered against its attorney, it lacks the requisite interest for standing to appeal.")
It is the attorney's interest that is at stake, and it is the attorney that should bring the appeal in his own name. An appeal is begun by the filing of a notice of appeal. W.R.A.P. 2.07(a)(1) states that the party or parties taking the appeal must be specified in the notice of appeal. Thus, if an attorney wishes to appeal the award of sanctions against him, the attorney must file a notice of appeal in his own name. [Attorney] never filed a notice of appeal in his name. W.R.A.P. 1.03 states "[t]he timely filing of a notice of appeal, which complies with Rule 2.07(a), is jurisdictional." Simply put, because [Attorney] never appealed the award of sanctions against him, this Court lacks jurisdiction to hear and decide the issue.
Welch v. Hat Six Homes , 2002 WY 81, ¶¶ 12-13, 47 P.3d 199, 202-03 (Wyo. 2002).
[¶14] We reiterated the point later that same year:
We recently addressed our jurisdiction to hear an appeal from the imposition of sanctions when only the client, and not also the sanctioned attorney, has appealed in Welch v. Hat Six Homes , 2002 WY 81, 47 P.3d 199 (Wyo. 2002). Within that opinion, we announced the rule that, when the award of sanctions is against the attorney, clients do not possess the requisite interest, pecuniary or otherwise, to support standing. Welch , ¶ 12 (citing Estate of Bishop v. Bechtel Power Corp. , 905 F.2d 1272, 1276 (9th Cir. 1990) ). In those circumstances, it is the attorney's interest that is at stake, and it is the attorney who should bring the appeal in his own name. Welch , ¶ 13. When the attorney fails to file a notice of appeal in his name, W.R.A.P. 2.07 and 1.03 have not been satisfied, and this court lacks jurisdiction to hear and decide the issue.
Goglio v. Star Valley Ranch Ass'n , 2002 WY 94, ¶ 36, 48 P.3d 1072, 1085 (Wyo. 2002).
[¶15] Despite our clear pronouncements in Welch and Goglio , Ms. Mears did not bring this case in her own name. The notice of appeal is entitled "Defendant/Appellant's Notice of Appeal," and it specifies: "COMES NOW , Defendant/Appellant, by and through the undersigned attorney, Traci E. Mears, and pursuant to W.R.A.P. Rule 2.07, hereby gives notice that Defendant, [Mother], is appealing the Order Imposing Sanctions on Traci E. Mears ." Because this appeal was not brought in Ms. Mears's own name, Father asserts that we lack jurisdiction and that the appeal must be dismissed.
[¶16] There is no question that Ms. Mears is the only person challenging the sanction order. The Rule 11 motion filed in district court sought sanctions only against Ms. Mears. She was the only one who responded to the motion and she did so in a pleading entitled "Attorney, Traci E. Mears Response to Plaintiff's Motion for Sanctions." Ms. Mears concedes that Mother did not appeal the prior sanction award against Mother. According to Ms. Mears, "That decision was [Mother's] to make and [Mother] chose not to appeal the order." It is also readily apparent that Mother has no incentive to appeal the *828 sanction order against Ms. Mears. The sanction order against Ms. Mears benefited Mother by making Ms. Mears jointly and severally responsible for the attorney fees previously assessed as a sanction against Mother. Mother satisfied the sanction judgment against her by paying only one-half of the attorney fees.
[¶17] It is also undisputed that Ms. Mears did not file the Notice of Appeal in her own name. She appears to concede that she was unaware of our precedent and, consistent with the approach she took in district court, attempts to place blame upon Father. In her reply brief she stated:
The Clerk of the Supreme Court docketed the appeal on January 5, 2018 and issued a letter to the parties advising both of the case caption. The Clerk stated that if either party believed the caption was in error to contact the Clerk's office before filing anything. Appellant did not find the case caption in error and proceeded to file her Brief accordingly. Rather than notify the Clerk of his misgivings about the case caption, [Father] lies in wait, much like a leopard hiding in the brush to pounce on its prey, before raising the issue of jurisdiction in his Brief.
There is no merit in the position espoused by Ms. Mears. She, not Father, is responsible for filing a timely and proper notice of appeal. Furthermore, we have long recognized that subject matter jurisdiction is an issue that can be raised at any time by any party or the Court. Edsall , ¶ 10, 375 P.3d at 801. Any failure to comply with the rules is the sole responsibility of Ms. Mears.
[¶18] Ms. Mears also seeks relief from the requirements set forth in Welch and Goglio under a "limited exception" discussed in both of those cases. In Welch , we stated:
In the recent appeal involving the award of sanctions against an attorney, Caldwell v. Cummings , 2001 WY 106, 33 P.3d 1138 (Wyo. 2001), this Court, on its own motion, substituted appellants. Originally, the client, who we recognized as having no appealable interest, brought the appeal. This Court decided that it was appropriate to substitute appellants in Caldwell because the appeal was from an order imposing sanctions against the attorney only. Id. at n.1. Because the award was against the attorney only, it was obvious that the attorney was the only person who could bring the appeal. Thus, it was objectively clear that the attorney intended to take the appeal. See Laurino , 220 F.3d at 1218 ("The notice of appeal here specifically purports to appeal, among other things, from an order ... that only concerns the sanctions entered against [the attorney]. Designation of this order provides sufficient evidence, by implication, of [the attorney's] intention to take an appeal from the order of sanctions." (emphasis in original) ).
In Caldwell , then, because it was objectively apparent from the face of the notice of appeal that the attorney was the proper party to the appeal, we allowed the appeal to be maintained in the name of the attorney.
Welch , ¶¶ 14-15, 47 P.3d at 203. We made similar statements in Goglio :
However, in Welch , we also specifically recognized the narrow exception to the foregoing rule that applies when it is objectively clear from the court's order that it only applies to the attorney and not the client. We stated that designation of such an order provides sufficient evidence, by implication, of the attorney's intention to take an appeal from the order of sanctions.
Goglio , ¶ 37, 48 P.3d at 1085 (emphasis in original). Ms. Mears claims the exception applies because it is "objectively clear" that she intended to take the appeal.
[¶19] In both Welch and Goglio , we declined to apply the exception. In both cases, the attorney was not named as a party to the appeal and the parties attempted to challenge the sanction award against the attorney. In Welch , ¶ 15, 47 P.3d at 203, we stated that the parties were not entitled to "the same leniency" we provided in Caldwell .
[¶20] In the instant case, it is "objectively clear" that the order being appealed applies to Ms. Mears. The more difficult question is whether the exception remains viable, or should remain viable, in light of the specific mandates of Welch and Goglio .
*829 Welch , ¶ 13, 47 P.3d at 203 ; Goglio , ¶ 36, 48 P.3d at 1085. We conclude that the exception undermines the mandate and is not available to convey subject matter jurisdiction in this Court where the attorney has failed to appeal a sanction award against the attorney in his own name. To the extent that Caldwell , Welch , and Goglio indicate otherwise, those cases are overruled.
[¶21] The apparent conflict between the mandate of Welch and Goglio and the exception found in Caldwell is perhaps best understood by the timing of those decisions. When Caldwell was decided in November 2001, we had not yet made it clear that an appellate challenge to a sanction order entered against an attorney must be brought in the name of that attorney. Welch was decided in May 2002, and Goglio was decided the following month. Importantly, Welch and Goglio both involved appeals that were docketed in this Court in 2000. The mandate announced in Welch and confirmed in Goglio did not exist when those appeals were filed. Stated differently, prior to our decision in Welch , an attorney intending to appeal a sanction order against that attorney had no notice that the appeal must be filed in the name of that attorney. Welch made that requirement clear.
[¶22] Given that lack of clarity, it was perhaps appropriate for this Court to allow an exception in Caldwell . But in 2002, in Welch and again in Goglio , we made the rule abundantly clear: "[I]f an attorney wishes to appeal the award of sanctions against him, the attorney must file a notice of appeal in his own name." Welch , ¶ 13, 47 P.3d at 203. However, since the appeals had been filed prior to the Caldwell decision, it was appropriate for the Court to discuss the potential availability of the exception. As mentioned earlier, the Court determined in both cases that the exception did not apply.
[¶23] Although the exception was discussed in Welch and Goglio , legal justification for the exception is elusive. The Caldwell opinion does not explicitly recognize an "exception" or provide any legal analysis for the creation of such an exception. The only discussion on the subject in that opinion is in a footnote at the beginning of the opinion: "We have amended the caption on our own motion. The sanction at issue in this appeal was imposed on Mr. Caldwell. ... [His client] had no interest in this appeal, but Mr. Caldwell does." Caldwell , 33 P.3d 1138 n.1. There was no reference to precedent or other supporting authority.
[¶24] The explanation for the exception found in Welch , ¶ 14, 47 P.3d at 203, included a reference to only one case, Laurino v. Tate , 220 F.3d 1213 (10th Cir. 2000). In Laurino , the court wrote:
The notice of appeal here specifically purports to appeal, among other things, from an order entered on May 18, 1999, that only concerns the sanctions entered against [the attorney]. Designation of this order provides sufficient evidence, by implication, of [the attorney's] intention to take an appeal from the order of sanctions. We therefore proceed to consider the merits of his arguments.
Laurino , 220 F.3d at 1218 (emphasis in original; internal citation omitted). However, the decision in Laurino relied directly on a federal rule of appellate procedure: "Appeals should not be dismissed, however, 'for failure to name a party whose intent to appeal is otherwise clear from the notice.' Fed. R. App. P. 3(c)(4)." Id . The Wyoming Rules of Appellate Procedure contain no such provision. Moreover, even under the federal rules, the general proposition is that "[t]he person sanctioned under Rule 11 is the real party in interest on the appeal and should be the person named in the notice of appeal." 5A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1337.4, at 766 (3d ed. 2004).
[¶25] There is no suggestion in this case that Ms. Mears relied upon the Caldwell exception in filing her appeal in the name of her client. Our decisions in Welch and Goglio make it clear that the appeal must be filed in the name of the attorney. Ms. Mears failed to file a timely notice of appeal in her own name and, as a result, we lack jurisdiction.
[¶26] Dismissed.